UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALAN BLACK,<br><br>    Defendant. | Case No. 17-20656<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER ON DEFENDANT'S RECONSIDERATION REQUEST FOR COMPASSIONATE RELEASE [59]**

After pleading guilty to possession with intent to distribute heroin, Defendant Alan Black was sentenced to 100 months' imprisonment. He is presently serving his sentence at the Federal Correctional Institution Hazelton in West Virginia. As a result of the coronavirus pandemic and Black's underlying health conditions, he has again moved for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) after exhausting his administrative remedies. The Government does not believe that Black has demonstrated an extraordinary or compelling reason for release or that an evaluation of the applicable 3553(a) supports his release. The Court agrees. The motion is DENIED.

**I.**

In June 2017, Black conspired with another individual to deliver 194 grams of heroin from Phoenix, Arizona to Flint, Michigan. (ECF No. 46, PageID.137.) Black arranged for the heroin to be hidden in a vehicle in Arizona and for that vehicle to be transported to Flint. (*Id*.) When the truck transporting the vehicle entered the Flint area, it was searched by agents of the Drug Enforcement Agency. (*Id*. at PageID.138.) The agents recovered the heroin hidden in the spare tire

compartment of the vehicle. (*Id*.) An undercover agent accompanied the truck driver to deliver the vehicle to Black, at which time he was arrested. (*Id*.) Black was indicted on two drug charges on October 4, 2017 (ECF No. 1) and ordered detained pending trial on October 20, 2017 (ECF No. 12, 14).

In time, Black pleaded guilty to one count of possession with intent to distribute more than 100 grams of heroin. (ECF No. 46.) The Court sentenced Black on October 16, 2019, to the 100 months' imprisonment agreed to by the parties as part of their Rule 11 plea agreement. (ECF No. 50.) As part of this plea deal, the Government agreed to dismiss the Penalty Enhancement Information it had filed under 18 U.S.C. § 851 as a result of Black having a prior felony drug conviction. (ECF No. 46, PageID.140.) This enhancement would have subjected Black to a 10-year mandatory minimum sentence. (*Id*.) The conspiracy to possess with intent to distribute heroin charge was also dismissed. (*Id*. at PageID.142.)

Black is currently incarcerated at the Federal Correctional Institution Hazelton in West Virginia and, with good time credits, has a projected release date of December 21, 2024. (ECF No. 62-2, PageID.323).

Black previously sought and was denied compassionate release; he now renews his request. Specifically, in August, he filed a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing the COVID-19 pandemic and his underlying medical conditions. (ECF No 52.) But he had not exhausted his administrative remedies. (ECF No. 52, PageID.177–178.) So the Court denied the motion without prejudice. (*Id*. at PageID.178.) Black now renews his motion. (ECF No. 59.) He is seeking "immediate release due to having CDC [underlying] conditions that will cause [him] complication if [he] contract COVID-19." (*Id*. at PageID.275.) In support, he provides some medical records. (*Id*. at PageID.279–289.) The Government's response provides

even more. (ECF No. 63.) Having reviewed the briefing, the Court does not believe oral argument would aid in the resolution of the motion. *See* E.D. Mich. LR 7.1(f).

## II.

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is compassionate release. As recently summarized by the Sixth Circuit, four requirements must be satisfied for a defendant's motion for compassionate release to be granted: "(1) the defendant must exhaust all administrative rights to appeal as set out in 18 U.S.C. § 3582(c)(1)(A), (2) the district court must analyze the motion against the factors set forth in Section 3553(a) 'to the extent that they are applicable,' (3) the court must find extraordinary and compelling circumstances warranting compassionate release, and (4) the court must find that release is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Gaston*, No. 20-3769 (6th Cir. Nov. 23, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i) and *United States v. Ruffin*, 978 F.3d 1000, 1003–05 (6th Cir. 2020)). In these defendant-initiated compassionate release cases, though, "the passage of the First Step Act rendered § 1B1.13 [policy statements] 'inapplicable.'" *United States v. Jones*, — F. 3d —, No. 20-3701, 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020). District courts may deny relief on any one of these requirements alone. *See Ruffin*, 978 F.3d 106.

## A.

The statutory exhaustion requirement is mandatory. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Black submitted a request to the warden for compassionate release which was denied on October 16, 2020. (ECF No. 59, PageID.277.) The Government concedes that Black exhausted his administrative remedies. (ECF No. 62, PageID.296, 304.)

3

**B.**

Black must demonstrate "extraordinary and compelling reasons" to justify his early release.

**1.**

The term "extraordinary and compelling" is not defined in the statute; instead, another provision, 28 U.S.C. § 994(t), directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons . . . including the criteria to be applied and a list of specific examples." The Sentencing Commission has done so in the commentary to the applicable policy statement, USSG § 1B1.13, setting forth four specific categories. USSG § 1B1.13, comment n.1. But this policy statement and accompanying commentary have not been updated since the passage of the First Step Act of 2018, which amended § 3582(c)(1)(A) to permit defendants to file motions for compassionate release on their own behalf. As a result, the policy statement still provides that a sentence reduction may be granted only on the Bureau of Prison's motion. *See* USSG § 1B1.13 & comment n.4. Thus, says the Sixth Circuit, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Jones*, 2020 WL 6817488, at *6.

**2.**

Compassionate release is aptly named during a once-in-a-lifetime global pandemic. As is now well known, the deadly "COVID-19 virus is extremely contagious and conditions favor its more rapid transition in detention or correctional facilities." *United States v. You*, No. 20-5390, 2020 WL 3867419, at *1 (6th Cir. Apr. 22, 2020) (Order). But the mere existence of the pandemic has not been found to be an extraordinary and compelling reason as this would result in the release

4

of all federal prisoners. And the courts have also consistently found that "[a]n inmate's generalized fear of contracting Covid-19, without more, does not rise to the level of an extraordinary and compelling circumstance." *United States v. Urrabazo-Maldonado*, No. 20-3727, 2020 U.S. App. LEXIS 29873, at *4 (6th Cir. 2020) (unpublished); *see also United States v. Raia*, 954 F.3d 594, 2020 WL 1647922, at *2 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

So what is an extraordinary and compelling circumstance in the context of this unprecedented pandemic? In making this determination, this Court, like many others in this District, has considered whether "defendants had severe medical conditions which placed them at high risk of coronavirus infection, were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020). Post-*Jones*, these remain appropriate considerations.

Black's medical records confirm that, at age 49, he suffers from hypertension, hyperlipidemia, prediabetes, sleep apnea, and mild renal impairment. (ECF No. 63). While the Centers for Disease Control and Prevention indicates that people with hypertension "might be at an increased risk for severe illness from the virus that causes COVID-19," none of Black's other conditions are identified as those which exacerbate the effects of, or make a person more vulnerable to, COVID-19. *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://perma.cc/XNZ9-LBML.

And Black's medical records also indicate that his health conditions are being well managed and controlled at Hazelton. His medication charts show that he is being prescribed medications for all of his diagnosed conditions. (ECF No. 59, PageID.286; ECF No. 63-1,

5

PageID.396.) For instance, since taking medication for his hypertension, Black's blood pressure readings have included the following:

- July 1, 2020: 112/60
- June 25, 2020: 148/82
- June 22, 2020: 105/71
- June 15, 2020: 130/84
- June 1, 2020: 108/62

(ECF No. 63-1, PageID.334; ECF No. 59, PageID.283). Most fall below the CDC definition of hypertension (i.e., blood pressure greater than 130/80). *Facts About Hypertension*, CDC, https://perma.cc/RD99-CW6S. And while courts are not fully settled on the significance of hypertension in a request for compassionate release, many have found the diagnosis is not sufficient to show extraordinary and compelling circumstances, especially if the condition is well managed. *See, e.g.*, *United States v. Colbert*, No. 99-cr-80399, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) (denying compassionate release motion because hypertension, "a condition that affects about 46% of the U.S. adult population," is not an extraordinary and compelling condition); *United States v. Santos*, No. 18-CR-20719-3, 2020 WL 5095527, at *4 (E.D. Mich. Aug. 28, 2020) (finding that "even if Defendant's conditions put him at an elevated risk of contracting COVID-19 or experiencing symptoms therefrom," the defendant's well-managed hypertension did not qualify as a condition that substantially diminishes his ability to provide self-care).

And apart from his hypertension, none of Black's other health conditions show that his circumstances are "extraordinary and compelling." As early as January 31, 2020, Black was prescribed a CPAP machine for his sleep apnea (ECF No. 59, PageID.281–282) and, according to the medical personnel, as of August 13, he was "utilizing CPAP with good effect, no need for sleep study" (ECF No. 63-1, PageID.330). For his mild renal impairment, he was "agreeable to

6

Risinopril" (ECF No. 59, PageID.283), and there is no other mention in the records of any other kidney problems or issues. For Black's prediabetes, the doctors "have reviewed treatment with diet and exercise." (*Id.*) Black also received a chest x-ray in January 2020 that showed clear lungs. (ECF No. 63-1, PageID.413.) The Court also notes that, while asserting these concerns about the coronavirus, Black declined to receive a flu shot on October 7, 2020 (ECF No. 63-1, PageID.403), which reports suggest may be a helpful preventative measure. *See https://www.webmd.com/lung/news/20201102/get-your-flu-shot-it-might-shield-you-from-severe-covid#1*.

In addition to being responsive to Black's medical needs, the Federal Bureau of Prisons, explains the Government, has also taken significant precautionary measures to minimize the risk of COVID-19 to Black and other inmates. (ECF No. 62, PageID.297–299.) There is nothing in the record to suggest that Hazelton has not implemented these measures. At present, the facility is reporting two inmate and eight staff positive cases and 15 inmate and 17 staff recoveries. Federal Bureau of Prisons, *COVID-19*, https://perma.cc/Q786-YXSC. And Black has served only about 38 months of his 100-month agreed upon sentence. (ECF No. 17.)

In short, the Court is not convinced that Black's controlled medical conditions, combined with his incarceration at Hazelton, place his health and safety at such great risk to constitute extraordinary and compelling reasons for reduction of his sentence, especially "when considering the great number of people both in and out of prison who are facing these same challenges." *United States v. Williams*, No. 20-3839, 2020 U.S. App. LEXIS 35649, *4 (6th Cir. Nov. 12, 2020).

## C.

Even if "extraordinary and compelling reasons would otherwise justify relief," the Sixth Circuit has "repeatedly recognized that district courts may deny relief under the § 3553(a) factors.

*United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020). Black, however, does not mention these factors, while the Government addresses them in detail. (ECF No. 62, PageID.314–319.)

As noted, Black has yet to serve even half of his 100-month sentence. And this was a negotiated sentence to avoid a 120-month mandatory minimum. (ECF No. 46, PageID.140–141.) The Sixth Circuit has "recognized that some of the § 3553(a) factors, including the 'need to provide just punishment' and 'to reflect the seriousness of the offense,' allow courts to consider the 'amount of time' that a defendant has served on a sentence when deciding whether to grant a sentence reduction. *Ruffin*, 987 F.3d at 1008 (citing *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020)).

Black qualifies for the highest criminal history category, VI. As detailed in the Government's response brief, Black has numerous convictions for drug and gun offenses going back to 1990. (ECF No. 62, PageID.316–319.) Several of these convictions involve some effort to elude the police on the front end and most involve violating parole and probation on the back end. (*Id.*) Indeed, Black has received lifetime probation in connection with two separate offenses. (ECF No. 62, PageID.316–317.) Following the second, "he violated probation and parole repeatedly over the next decade, yo-yoing in and out of custody until his discharge in 2014." (*Id.* at PageID.317.)

This criminal activity culminated in the underlying offense in which Black, utilizing false information, arranged for the delivery of a car from Phoenix to Flint with almost 200 grams of hidden heroin. He constructively possessed the heroin and intended to distribute it. (ECF No. 46, PageID.137.)

In further considering Black's history and characteristics and their impact on the 3553(a) factors, Black acknowledged at sentencing his extreme addiction to illegal drugs. And with

8

inadequate treatment and years spent in and out of jail, Black has virtually no employment history. Since being incarcerated, he has received one disciplinary infraction for bribing a prison official. (ECF No. 62-4, PageID.328.) He does, though, have some family support. In his initial motion for compassionate release, he indicated he could "live with [his] wife and family" and that he had a job waiting for him "inside a large spacious warehouse making plastic containers." (ECF No. 52, PageID.180.) But that was several months ago and no confirmation has been provided. Nor has the Court been given any other information about Black's rehabilitative efforts. As mentioned, he is receiving regular medical treatment to manage his conditions.

So in the end, the Court finds that, especially considering the underlying offense, Black's extensive criminal history, and his dismal performance under court supervision, Black's release would not promote respect for the law, adequately protect the public, afford adequate deterrence, or provide needed treatment to Black. Accordingly, the § 3553(a) sentencing factors do not support the requested sentence reduction.

### III.

Because Black has not demonstrated extraordinary and compelling reasons to reduce his sentence to time served, and the § 3553(a) factors do not support such a reduction, Black's renewed request for compassionate release (ECF No. 59) is DENIED.

SO ORDERED.

Dated: November 30, 2020

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE